UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

EDWARD M. HAMPTON,

               Petitioner,

         v.                      CAUSE NO.: 3:22-CV-885-MGG

WARDEN,

               Respondent.

OPINION AND ORDER

Edward M. Hampton, a prisoner without a lawyer, filed a habeas corpus petition

challenging a 2021 probation revocation proceeding in Allen County under case

number 02D05-1903-F3-10. (ECF 7.) For the reasons stated below, the petition is denied.

I.     BACKGROUND

In deciding the petition, the court must presume the facts set forth by the state

court are correct, unless Mr. Hampton rebuts this presumption with clear and

convincing evidence. 28 U.S.C. § 2254(e)(1). On direct appeal, the Indiana Court of

Appeals set forth the facts underlying Mr. Hampton's conviction and subsequent

revocation of his probation as follows:

> In 2019, Hampton was charged with Level 3 felony robbery, Level 5 felony
> battery, and Level 6 criminal recklessness for robbing and stabbing a man.
> Hampton pleaded guilty to robbery under a plea agreement specifying
> dismissal of the other two counts. The trial court sentenced Hampton to 15
> years imprisonment for the robbery conviction and "merged" the other
> two convictions. Hampton appealed, and this Court, by memorandum
> decision, affirmed his robbery conviction and sentence but remanded with
> instructions to vacate the convictions on the other two counts. The trial
> court vacated those convictions as ordered.

About 1 ½ years after he entered prison, Hampton sought and obtained the trial court's recommendation for his placement in the Purposeful Incarceration Program. He completed the program six months later and immediately sought a modification of his sentence. In August 2021—about two years after imposing Hampton's 15-year executed sentence—the trial court modified that sentence by suspending it to probation. The court required Hampton to spend the first two years of his probation on work release and the third year on home detention.

Two months after he left prison, Hampton disappeared but was captured hours later in a hotel room. The State petitioned to revoke his probation, alleging Hampton violated the terms of his probation by failing "to successfully complete Allen County Community Corrections supervision." The State also charged him separately with escape.

Hampton waived his right to counsel at the probation revocation hearing and represented himself instead. He admitted that he left work after six hours and "got a motel room" instead of returning to the work release center. He also admitted he "relapsed" a week before absconding, although he did not provide details. The trial court revoked his probation and ordered him to serve the rest of his 15-year sentence in prison.

*Hampton v. State*, 193 N.E.3d 396 (Table), 2022 WL 2444937, at *1 (Ind. Ct. App. July 6, 2022) (headnotes and internal citations omitted).

On direct appeal, Mr. Hampton asserted a number of due process violations, specifically, that the trial court erred when it: (1) allowed him to admit to the probation violation without giving him a copy of the state's petition; (2) failed to advise him of the possible consequences of admitting to the violation; (3) allowed him to proceed *pro se* without a valid waiver of his right to counsel; (4) denied him an opportunity to present mitigating evidence; and (5) entered judgment without statutory authority. *Id.* at *2. He also argued that the trial court abused its discretion in sentencing him to serve his full sentence without considering lesser sanctions. *Id.* at *4.

The Indiana Court of Appeals rejected these arguments. The court first concluded that Mr. Hampton waived any due process claims by failing to object in the trial court, and by failing to frame his claims in terms of a "fundamental error" as required by state law. *Id.* at *2. Notwithstanding the waiver, the court found no due process errors. *Id.* The court concluded that he was given proper notice of the charge and advisement of his rights, validly waived his right to counsel and pled guilty, was given an opportunity to argue extensively at the hearing, and did not request an opportunity to present additional evidence or identify what additional evidence he wanted to present. *Id.* at *2-4. The court further concluded that the trial court had legal authority to revoke his probation and had acted within its discretion in imposing the sentence. *Id.* at *4-5. The court therefore affirmed the judgment.[1] *Id.*

Mr. Hampton filed a petition to transfer to the Indiana Supreme Court asserting the following claims: (1) the trial court lacked statutory authority to revoke his probation; (2) a Double Jeopardy violation occurred when his probation was revoked and he was separately charged with escape based on the same acts; (3) the trial court violated his rights by failing to advise him of the possible consequences of pleading guilty; and (4) the trial court erred by allowing him to waive his right to counsel and plead guilty after he told the court he had mental health problems. (ECF 14-7.) The Indiana Supreme Court denied transfer without comment. *Hampton v. State*, 196 N.E.3d

---

[1] The court did find a minor error in the abstract of judgment, which reflected that the underlying battery and criminal recklessness counts had been "merged" with the robbery count, when in fact those counts had been dismissed. *Hampton*, 2022 WL 2444937, at *5. The court remanded with instructions for the trial court to correct the abstract of judgment. *Id.*

686 (Ind. 2022). Mr. Hampton did not seek review in the U.S. Supreme Court. (ECF 7 at 1.)

He then turned to federal court. In his federal petition he asserts three claims, which the court paraphrases as follows: (1) his rights under the Fourteenth Amendment Due Process Clause and state law were violated when the trial court permitted him to waive his right to counsel and plead guilty notwithstanding his mental health problems; (2) his rights under the Fifth Amendment Double Jeopardy Clause and state law were violated when his probation was revoked and he was also separately charged with escape based on the same acts; and (3) his incarceration is "unlawful" because the escape charge was ultimately dismissed and therefore his probation could not have been revoked on that ground. (ECF 7 at 3-4.) The respondent argues that these claims are procedurally defaulted and without merit. (ECF 14.) Mr. Hampton filed a traverse in support of his petition. (ECF 18, 19.) The matter is now ripe for adjudication.

II.    ANALYSIS

Mr. Hampton's petition is governed by the provisions of the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which allows a district court to issue a writ of habeas corpus "only on the ground that [the petitioner] is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Habeas corpus was intended as a "guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Gilbreath v. Winkleski*, 21 F.4th 965, 981 (7th Cir. 2021) (citation and quotation marks omitted). To

4

succeed, a petitioner must meet the stringent requirements of 28 U.S.C. § 2254(d), set

forth as follows:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

This standard is "difficult to meet" and "highly deferential." *Hoglund v. Neal*, 959

F.3d 819, 832 (7th Cir. 2020) (quoting *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011)). "It is

not enough for a petitioner to show the state court's application of federal law was

incorrect; rather, he must show the application was unreasonable, which is a

'substantially higher threshold.'" *Id.* (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473

(2007)). In effect, "[a] petitioner must show that the state court's ruling on the claim

being presented in federal court was so lacking in justification that there was an error

well understood and comprehended in existing law beyond any possibility for fair-

minded disagreement." *Id.* (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).


A.    Due Process

In claim one, Mr. Hampton asserts that his due process rights were violated

when he was allowed to waive his right to counsel and plead guilty to the probation

violation even though he told the court that he had mental health problems. The

respondent argues that this claim is procedurally defaulted and without merit. (ECF 14 at 7-11.)

      1.      Procedural Default

Before considering the merits of a habeas petition, the court must ensure that the petitioner has exhausted all available remedies in state court. 28 U.S.C. § 2254(b)(1)(A); *Hoglund*, 959 F.3d at 832. The exhaustion requirement is premised on a recognition that the state courts must be given the first opportunity to address and correct violations of their prisoners' federal rights. *Davila v. Davis*, 582 U.S. 521, 527-28 (2017); *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). For that opportunity to be meaningful, the petitioner must fairly present his constitutional claim in one complete round of state review. *Baldwin v. Reese*, 541 U.S. 27, 30-31 (2004); *Boerckel*, 526 U.S. at 845. This includes seeking discretionary review in the state court of last resort. *Boerckel*, 526 U.S. at 848. The companion procedural default doctrine, also rooted in comity concerns, precludes a federal court from reaching the merits of a claim when the claim was presented to the state courts and was denied on the basis of an adequate and independent state procedural ground, or when the claim was not presented to the state courts and the time for doing so has passed. *Davila*, 582 U.S. at 527; *Coleman v. Thompson*, 501 U.S. 722, 735 (1991).

A habeas petitioner can overcome a procedural default by showing both cause for failing to abide by state procedural rules and resulting prejudice. *Davila*, 582 U.S. at 528. "Cause" in this context means "an objective factor external to the defense that impeded the presentation of the claim to the state courts." *Crutchfield v. Dennison*, 910

F.3d 968, 973 (7th Cir. 2018) (citation and internal quotation marks omitted). A habeas petitioner can also overcome a procedural default by establishing that the court's refusal to consider a defaulted claim would result in a fundamental miscarriage of justice. *House v. Bell*, 547 U.S. 518, 536 (2006).

The record reflects that Mr. Hampton did not raise his due process claim at each level of review in the state proceedings. Although he argued to the Indiana Court of Appeals that his due process rights were violated in connection with his waiver of counsel, his argument was that "his waiver was invalid because the trial court failed to advise him of the consequences of proceeding pro se and 'the nature, extent and importance of the right to counsel.'" *Hampton*, 2022 WL 2444937, at *3. That claim involved different operative facts than the claim he asserts here, which is based on his alleged mental health problems. To fairly present a claim to the state courts, the "petitioner must place before the state court both the controlling law and the operative facts" supporting the claim. *Hicks v. Hepp*, 871 F.3d 513, 530 (7th Cir. 2017). Mr. Hampton did not do so. His failure to fairly present this claim to the Indiana Court of Appeals means that it is procedurally defaulted in this proceeding.[2] *Boerckel*, 526 U.S. at 845.

Even if claim one could be read as the same claim he presented to the Indiana Court of Appeals, that court found his due process claims waived because they were

---

[2] He points out that he included this claim in his petition to transfer to the Indiana Supreme Court, but the exhaustion doctrine requires that a claim be raised "at each and every level in the state court system." *Boerckel*, 526 U.S. at 845. Additionally, under Indiana law, a defendant is ordinarily deemed to have waived an argument asserted for the first time in a petition to transfer. *Reiswerg v. Statom*, 926 N.E.2d 26, 30 n.3 (Ind. 2010); *Paramo v. Edwards*, 563 N.E.2d 595, 600 (Ind. 1990) .

not raised in accordance with state law. *Hampton*, 2022 WL 2444937, at *3. The

determination of waiver amounts to an adequate and independent state ground that

precludes federal review. *Kaczmarek v. Rednour*, 627 F.3d 586, 591 (7th Cir. 2010)

("[W]hen a state court refuses to reach the merits of a petitioner's federal claims because

they were not raised in accord with the state's procedural rules . . . that decision rests on

independent and adequate state law grounds."); *Bobo v. Kolb*, 969 F.2d 391, 399 (7th Cir.

1992) ("A federal court reviewing a habeas petition is required to respect a state court's

finding, under state law, of waiver or procedural default."). Therefore, this claim is

defaulted.

>        2.        Merits

Assuming for the sake of argument Mr. Hampton could overcome the

procedural default, the respondent alternatively argues that this claim is without merit

under AEDPA standards. (ECF 14 at 13-16.) In rejecting Mr. Hampton's due process

claims notwithstanding his waiver of the claims, the Indiana Court of Appeals

concluded that he validly waived his right to counsel and was properly advised of the

consequences of his plea. *Hampton*, 2022 WL 2444937, at *2-4. The court recognized

*Morrissey v. Brewer*, 408 U.S. 471, 489 (1972), as setting forth "[t]he minimum

requirements of due process in a contested probation revocation hearing," specifically,

"(a) written notice of the claimed violations of probation; (b) disclosure to the

probationer of evidence against him; (c) opportunity to be heard in person and to

present witnesses and documentary evidence; (d) the right to confront and cross-

examine adverse witnesses (unless the hearing officer specifically finds good cause for

not allowing confrontation); (e) a neutral and detached hearing body; and (f) a written statement by the factfinder as to the evidence relied on and reasons for revoking probation." *Id.* at *2 (citation omitted). The court further recognized the governing standard for a valid waiver of counsel as whether the waiver was "knowing, voluntary, and intelligent." *Id.* at *3. Its application of that standard to Mr. Hampton's case does not contradict Supreme Court precedent and is amply supported by the record.

"The Sixth Amendment does not provide merely that a defense shall be made for the accused; it grants to the accused personally the right to make his defense." *Faretta v. California*, 422 U.S. 806, 819 (1975). It is "undeniable that in most criminal prosecutions defendants could better defend with counsel's guidance than by their own unskilled efforts." *Id.* at 834. However, "where the defendant will not voluntarily accept representation by counsel, the potential advantage of a lawyer's training and experience can be realized, if at all, only imperfectly." *Id.* As the Supreme Court has explained: "To force a lawyer on a defendant can only lead him to believe that the law contrives against him. . . . [A]lthough he may conduct his own defense ultimately to his own detriment, his choice must be honored out of that respect for the individual which is the lifeblood of the law." *Id.* (citation omitted).

To proceed *pro se,* the defendant must "knowingly and intelligently" waive the right to counsel, acting in a manner that shows he "knows what he is doing" and made his choice "with open eyes." *Id.* at 835. In determining whether a defendant's waiver was knowing and intelligent, the court considers the extent of the warnings given by the court as well as "other evidence in the record that establishes whether the defendant

9

understood the dangers and disadvantages of self-representation." *United States v. Johnson*, 980 F.3d 570, 577 (7th Cir. 2020); *see also United States v. Eads*, 729 F.3d 769, 775 (7th Cir. 2013) ("[O]ur task is to examine the record as a whole to see if [the defendant] 'knowingly and intelligently' waived his right to counsel."). The court also considers "the background and experience of the defendant" and "the context of the defendant's decision to waive his right to counsel." *Johnson*, 980 F.3d at 577.

The record shows that Mr. Hampton expressed a dogged determination to represent himself throughout the criminal case. Prior to trial on the robbery charge, he sought and was granted permission to represent himself. *Hampton v. State*, 145 N.E.3d 159 (Table), 2020 WL 1528490, at *2 (Ind. Ct. App. Mar. 31, 2020). He was "warned against representing himself at trial, repeatedly." (ECF 14-1 at 9.) Notwithstanding these warnings, he chose to represent himself. (ECF 16-6 at 1-113.) He moved to suppress evidence, and at the suppression hearing, he cross-examined the state's witnesses, presented evidence, and made extensive arguments---including citing specific case law---to convince the court that the police had unlawfully searched the hotel room where he was staying. (*Id.* at 1-44.) At the bench trial, he made an opening statement, cross-examined the state's witnesses, and testified in his own defense. (*Id.* at 45-99.) He also renewed his arguments about the impropriety of the search leading to the discovery of certain inculpatory evidence. (*Id.*)

After the sentence was imposed, he indicated an intention to appeal. (*Id.* at 112.) The court asked him if he needed a public defender to represent him, to which he responded testily, "I don't need none of that. I can represent myself. Let's go." (*Id.*) The

court then stated, "If you wish to have an attorney---," but Mr. Hampton interrupted him, stating, "I just told you man, I don't need none of that, let's go!" (*Id.*) He did in fact represent himself on appeal (ECF 14-1 at 23), and after his conviction was affirmed, he filed a *pro se* post-conviction petition and a number of *pro se* motions seeking modification of his sentence. (ECF 14-1 at 23-28.)

At a hearing on August 20, 2021, the court granted his *pro se* motion for a sentence modification. (ECF 16-2 at 1-11.) At the close of the hearing, the court cautioned him as follows:

> I believe in rehabilitation, that's my job. It doesn't always happen and you mention some comment of you're a success story or you're the poster child or something along those lines. We'll see. You're not done yet. I could leave you in prison until Christmas of 2029. That was your original sentence. I'm not going to do that, as you've done what you were supposed to do. I'll show the remainder of your sentence is ordered suspended. I'll show conditions of probation as standard. Special conditions is you're at the Residential Services Center for two (2) years followed by one (1) year of home detention. Depending on how you do there I may be receptive to something else and, once again, we'll find out very quickly if you're serious about this or not. That breath you just exhaled- I can send you back to 2029. . . . I send people back to prison from Residential Services almost on a weekly basis. If you're going to be serious out there and continue rehabilitation, good. If you're not, you'll be right back in here and I'll send you back to DOC. Don't give those folks any trouble. . . . Go on the path you want to stay on and you can stay out of jail. If you don't, you go back. It's that simple.

(*Id.* at 10-11.)

Barely three months later, a hearing was held on the state's petition to revoke his probation. (*Id.* at 12-14.) The following colloquy occurred:

THE COURT: State your name.

THE DEFENDANT: Edward Hampton.

THE COURT: This is 19-F3-10. Did you read your rights this morning?

THE DEFENDANT: Yes, I did.

THE COURT: Did you understand those rights?

THE DEFENDANT: Yes, I did.

THE COURT: The [state] filed a Petition to Revoke your probation alleging that you failed [to] successfully complete Allen County Community Corrections supervision while serving consecutive sentence 19-F6-322; you violated that sentence prior to starting your supervision in this case. Do you understand what they say you did to violate probation?

THE DEFENDANT: Yes.

THE COURT: Are you requesting a public defender?

THE DEFENDANT: Is it possible that I could just proceed pro-se and plead guilty to the whatever and just get it over with today?

THE COURT: So, Mr. Hampton, you wish to waive the rights that you read and admit to the allegation that I read to you?

THE DEFENDANT: Yes, Sir.

THE COURT: Do you understand you have the right to have an attorney; if you cannot afford one, one would be appointed to you?

THE DEFENDANT: Yes, I do.

THE COURT: Do you understand you have the right to have a hearing requiring the State of Indiana to prove that you violated probation?

THE DEFENDANT: Yes.

THE COURT: And you wish to give up all those rights and admit to the allegations that I just read to you?

THE DEFENDANT: Yes sir, and if it pleases The Court, I would like to address The Court before any sentencing or whatever.

THE COURT: Okay.

(*Id.* at 14-15.) The court then permitted Mr. Hampton to speak at length about the circumstances that led to the petition for probation revocation being filed. He stated as follows:

> For three years straight, I have been able to stay out of trouble and drug free until now. While I was in prison I remained conduct clear the whole time I was there and found a way to help myself overcome my mental health issues through helping others who were never going home find ways to deal with and overcome their longings to either self-medicate, take their own life, or both. I found that going to college and studying law, attending NA meetings twice a week, working with mental health professionals to get me on the right meds and the right doses while also attending group therapy sessions were, and are, vital to my sobriety, mental health, well-being, and success in general. And studying law, surprisingly enough, gave me purpose and became something that I fell in love with, which I made plans and goals to continue upon my release by starting my own paralegal services. . . .

> But when I arrived at the work release facility, even the medications I was taking for my anxiety, depression, manic bi-polar disorder, and anti-social personality disorder were not allowed. While working a full-time job, ten hours a day, and six days a week, I was able to pay my child support and make amends with family. But when my family wanted to visit they were turned away and when my daughter wanted to see me I was told that the work release facility did not allow home visits and that broke my heart and I could feel my mental health issues getting the best of me. . . .

> I did not get into trouble immediately or stop working. But on November 14, I relapsed, and on November 19, I had a mental health collapse. On November 20, I went to work and made plans to commit suicide. I worked six hours, I left my job, I got a motel room, and decided that I was going to slit my wrists that day. I got the motel room and laid down crying, but within 30 minutes the cops were at my door. Your Honor, I'm ashamed that I was too weak to overcome not having my medications, not being allowed to go to the NA meetings, and for allowing the fact that I was forced to drop out of college to get to me like it did, because I was doing real good. I really was. . . .

> What I'm asking for is that whatever you want me to do, that you allow
> me---that you just show me some mercy and, if possible, give me a
> suspended sentence, which would allow me to work from home, to go
> home, work, see my daughter, enroll back in my college courses, attend
> my NA meetings, get my sponsor, continue the medications that I am now
> back on, and go through Park Center for therapy sessions.

(*Id.* at 15-18). At the conclusion of the hearing, the court revoked his probation and

sentenced him to serve the remainder of his prison sentence. (*Id.* at 19-20.)

It is worth noting that the right to counsel at a probation revocation hearing is

not as absolute as the right to counsel during the underlying criminal trial. The

Supreme Court has held that a defendant's right to counsel at probation revocation

hearings is limited to situations where "the denial of counsel would violate due process

of law, which ordinarily will be true only if the defendant makes a colorable claim "(i)

that he has not committed the alleged violation of the conditions upon which he is at

liberty; or (ii) that, even if the violation is a matter of public record or is uncontested,

there are substantial reasons which justified or mitigated the violation and make

revocation inappropriate." *Gagnon v. Scarpelli*, 411 U.S. 778, 790 (1973). In "doubtful"

cases, the court should consider whether the "probationer appears to be capable of

speaking effectively for himself." *Id.* at 791. Mr. Hampton has not made a colorable

claim that he did not commit the probation violation, either in state court or in this

proceeding. Rather, his claim is that there were extenuating circumstances that led him

to leave his work-release program without permission. Although in his view the

situation warranted leniency, another view would be that he was given a substantial

break on a 15-year sentence notwithstanding having a serious criminal record, and that

he squandered the opportunity only a matter of months after leaving prison. It is also evident from the transcript of the probation revocation hearing (and the underlying criminal trial) that Mr. Hampton was capable of speaking effectively and eloquently to defend his interests.

Even assuming he had a constitutional right to counsel at that stage,[3] the record reflects that he was properly advised of his rights, validly waived his right to counsel, and entered a knowing and voluntary guilty plea. It can be discerned from the transcript that he was given a written copy of his rights before court, which he acknowledged reviewing. The judge then reiterated orally that he had a right to the assistance of counsel and a right to a hearing at which the state would be required to prove the probation revocation charge. The record reflects that he understood and knowingly waived those rights. Although the court did not belabor the rights he was giving up, Mr. Hampton had significant exposure to the criminal justice system and

---

[3] To the extent he is arguing a violation of his right to counsel under Indiana law, such a claim would not be cognizable in this proceeding. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).

represented himself in the trial on the underlying charge.[4] In the course of the trial proceedings, the court cautioned him more than once about the pitfalls of proceeding without counsel. The court also cautioned him at length at the sentencing modification hearing about the consequences of committing a probation violation, making clear in no uncertain terms that if he gave the staff at the work-release program "any trouble," he would be sent back to prison. Only three months later, he absconded from the work-release program.

It is evident from the transcript that he was well aware of the consequences of admitting to his actions, and that he hoped to obtain leniency by acting quickly to take responsibility for what had occurred. There can also be no question he understood the nature of the charge, as he spoke at length about the events causing him to leave his placement and abscond to a hotel. Although in hindsight he may wish he would have proceeded with the benefit of counsel or required the state to prove up the probation

---

[4] Public records reflect that Mr. Hampton has an extensive criminal record dating back to 2001, including prior felony convictions. *See, e.g., State v. Hampton*, 02D04-1903-F6-000322 (Allen Sup. Ct. closed July 2, 2019); *State v. Hampton*, 02D04-1808-CM-003740 (Allen Sup. Ct. closed Aug. 7, 2018); *State v. Hampton*, 17D02-1801-CM-000035 (DeKalb Sup. Ct. closed Jan. 17, 2019); *State v. Hampton*, 17D01-1706-F6-000198 (DeKalb Sup. Ct. closed July 24, 2017); *State v. Hampton*, 02D04-1703-CM-001026 (Allen Sup. Ct. closed Mar. 13, 2017); *State v. Hampton*, 02D06-1701-CM-000300 (Allen Sup. Ct. Jan. 23, 2017); *State v. Hampton*, 76D01-1304-FB-000312 (Steuben Sup. Ct. closed Oct. 19, 2016); *State v. Hampton*, 02D04-1204-CM-001949 (Allen Sup. Ct. closed Apr. 9, 2012); *State v. Hampton*, 02D04-0705-FB-000079 (Allen Sup. Ct. closed Nov. 26, 2007); *State v. Hampton*, 02D04-0509-FD-000632 (Allen Sup. Ct. closed Feb. 24, 2006); *State v. Hampton*, 02D04-0510-CM-007811 (Allen Sup. Ct. closed Oct. 26, 2005); *State v. Hampton*, 02D04-0309-FD-000630 (Allen Sup. Ct. closed Dec. 29, 2003); *State v. Hampton*, 02D04-0203-FC-000054 (Allen Sup. Ct. closed Sept. 9, 2002); *State v. Hampton*, 02D04-0110-DF-000709 (Allen Sup. Ct. closed Feb. 19, 2002). He represented himself in one of the other cases. *Hampton*, 76D01-1304-FB-000312 (docket entry Sept. 18, 2013). He also had familiarity with probation revocation proceedings. In two prior cases, he had his probation revoked after admitting to a probation violation. *Hampton*, 02D04-0509-FD-000632 (docket entry May 11, 2006); *Hampton*, (docket entry Aug. 21, 2002).

violation, it is clear that he made the choice to proceed as he did at the probation revocation hearing with his eyes open. *Faretta*, 422 U.S. at 835.

He argues that the judge should not have permitted him to represent himself or plead guilty because of the unspecified "mental health collapse" he referenced in his comments to the judge. However, there are "narrow limits on [the court's power to prevent exercise of the right of self-representation." *Imani v. Pollard*, 826 F.3d 939, 944 (7th Cir. 2016). The court may deny the right of self-representation on the basis of mental illness only when the defendant suffers from "severe mental illness to the point where they are not competent to conduct trial proceedings by themselves." *Indiana v. Edwards*, 554 U.S. 164, 178 (2008). There is nothing in the record to suggest Mr. Hampton was suffering from a severe mental illness on the day of the probation revocation hearing. To the contrary, he spoke coherently and eloquently to the court at length at the hearing, discussing the circumstances leading to the petition to revoke his probation and his desire to plead guilty and move forward with his life. He specifically informed the court that he was "now back on" the medications that he had not been taking when he left the work-release program. (ECF 16-2 at 18.) Mr. Hampton was also a unique defendant with significant exposure to the criminal justice system and a lengthy history of self-representation, including representing himself at the trial on the underlying robbery charge.

Indeed, Mr. Hampton continued to show a strong desire for self-representation even after the probation revocation proceeding ended. The public defender was initially appointed to represent him on appeal, but a few months after the appointment Mr.

Hampton filed a "Motion to Remove Counsel and Proceed Pro Se." (ECF 14-1 at 18, 223.) Counsel was subsequently granted leave to withdraw by the Indiana Court of Appeals, whereafter Mr. Hampton filed a *pro se* brief citing to approximately 30 cases, statutes, and procedural rules in support of his arguments. (ECF 14-3.) He also filed a *pro se* petition to transfer to the Indiana Supreme Court. (ECF 14-7.)

Therefore, the record reflects that Mr. Hampton made the choice to proceed as he did at the November 30 hearing "with open eyes." *Faretta*, 422 U.S. at 835. He has not shown that the state court's rejection of his claim was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Hoglund*, 959 F.3d at 832. Even if this claim were not defaulted, it would not entitle him to federal habeas relief.

B.      Double Jeopardy

In claim two, he argues that his rights under the Fifth Amendment Double Jeopardy Clause and state law were violated when his probation was revoked and he was also separately charged with escape based on the same acts. To the extent he is relying on state law in support of this claim, his claim is not cognizable on federal habeas review. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). As for his federal claim, the respondent argues that it is defaulted and without merit.

1.      Procedural Default

As stated above, to avoid a finding of procedural default, Mr. Hampton must have presented his claim at all available levels of state review. *Baldwin*, 541 U.S. at 30-31; *Boerckel*, 526 U.S. at 845. He must have fairly presented the claim by placing "before the

state court both the controlling law and the operative facts" supporting the claim. *Hicks*, 871 F.3d at 530. In his brief filed with the Indiana Court of Appeals, Mr. Hampton's only reference to Double Jeopardy was under the "Statement of Issues" section, where he stated as follows: "That [the judge] abused his discretion when he chose to resentence the Appellant because he lacked <u>jurisdictional</u> authority to do so and violated <u>Ind. R. Crim. P. 11</u> by doing so and subjected Appellate to double jeopardy." (ECF 14-3 at 5) (emphasis in original). The argument section of the brief did not elaborate further on any Double Jeopardy claim, and instead he asserted claims labeled, "Abuse of Discretion," "Violation of Due Process," and "Inappropriate Sentence." (*Id.* at 6-16.) His bare reference to Double Jeopardy in the context of asserting a jurisdictional problem and citing to a state procedural rule cannot be considered sufficient to have alerted the Indiana Court of Appeals to the federal claim he raises here. Although he referenced Double Jeopardy in his reply brief, he only listed Indiana constitutional provisions in support of this argument.[5] (ECF 14-5 at 5, 7.) To fairly present a claim to the state courts, the petitioner must have alerted the courts to the "federal nature" of the claim. *Baldwin*, 541 U.S. at 33. Mr. Hampton did not do so. Because he did not properly present this claim to the state courts, it is procedurally defaulted in this proceeding.

        2.      Merits

Assuming he could overcome the procedural default, the respondent alternatively argues that the claim is without merit. When no state court has squarely

---

[5] Ordinarily an argument is waived under Indiana law if it is raised for the first time in a reply brief. *Curtis v. State*, 948 N.E.2d 1143, 1148 (Ind. 2011).

addressed the merits of a habeas claim, the court reviews the claim under the pre-AEDPA standard of 28 U.S.C. § 2243, "under which we dispose of the matter as law and justice require." *Morales v. Johnson*, 659 F.3d 588, 599 (7th Cir. 2011). "This is a more generous standard: we review the petitioner's constitutional claim with deference to the state court, but ultimately de novo." *Id.* (citation omitted).

The Fifth Amendment Double Jeopardy Clause, made applicable to the states through the Fourteenth Amendment, provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const., amend V. The Clause "serves the function of preventing both successive punishment and successive prosecution." *Witte v. United States*, 515 U.S. 389, 395–96 (1995) (citation omitted). The Clause thus prohibits retrials following acquittals. *Richardson v. United States*, 468 U.S. 317, 323-24 (1984). It also encompasses some aspects of the doctrine of collateral estoppel, precluding the government "from relitigating any issue that was necessarily decided by a jury's acquittal in a prior trial." *Yeager v. United States*, 557 U.S. 110, 119 (2009). Further, the Clause "prohibits . . . punishing twice, or attempting a second time to punish criminally, for the same offense." *Witte*, 515 U.S. at 396.

None of these principles were violated here. Mr. Hampton was not acquitted in a prior trial, nor was he tried twice on any charge. He argues that he could not have been charged with escape and had his probation revoked for the same act of leaving the work release program, but there is no legal support for such an argument. To the contrary:

> A parole revocation proceeding is an administrative proceeding designed to determine whether a parolee has violated the terms of his parole, not a proceeding designed to punish a criminal defendant for violation of a criminal law. A criminal prosecution is a judicial proceeding that vindicates the community's interests in punishing criminal conduct. Because the two proceedings serve different ends, the finding that the defendant no longer merits parole does not foreclose the criminal justice system from punishing the defendant for that conduct.

*United States v. Hanahan*, 798 F.2d 187, 189 (7th Cir. 1986). In other words, the revocation of his probation was a modification of his earlier sentence for robbery, not a new punishment for escape: "Because revocation of supervised release amounts only to a modification of the terms of the defendant's original sentence, and does not constitute punishment for the revocation-triggering offense, the Double Jeopardy Clause is not violated by a subsequent prosecution for that offense." *United States v. Wyatt*, 102 F.3d 241, 245 (7th Cir. 1996); *see also Witte*, 515 U.S. at 401-02 (Double Jeopardy Clause does not bar prosecution for an offense that has been considered in imposing a sentence for a separate offense). Thus, even if Mr. Hampton's claim were not defaulted, he has not established a constitutional error warranting federal habeas relief.

    C.      "Unlawful Incarceration"

Finally, Mr. Hampton argues that his incarceration is "unlawful" because the escape charge was ultimately dismissed. In his view, this means "the violation itself no longer existed," such that his probation could not be revoked based on his actions in leaving the work release program. (ECF 19 at 1; *see also* ECF 7 at 4.) The respondent argues that this claim is procedurally defaulted and otherwise without merit.

    1.      Procedural Default

21

As the respondent points out, Mr. Hampton did not present this claim to the Indiana Court of Appeals. (ECF 14-3; ECF 14-5.) He does not provide grounds for excusing his default. He points out that he included the claim in his petition to transfer, but his failure to present this claim at all levels of state review means that it is procedurally defaulted. *Boerckel*, 526 U.S. at 845.

2.   Merits

Assuming for the sake of argument he could overcome the procedural default, the respondent alternatively argues that the claim lacks merit. As a preliminary matter, Mr. Hampton is misrepresenting the record when he argues that he was "cleared of the escape charge." (ECF 19 at 2.) No determination was ever made about whether he committed escape. Rather, the docket reflects that the escape charge was dismissed in exchange for his agreement to plead guilty to the offense of "failure to return to lawful detention," also a felony. *See State v. Hampton*, 02D04-2111-F6-1554 (Allen Sup. Ct. closed Feb. 8, 2022). He was thus convicted of a criminal offense in connection with his unauthorized departure from the work-release program, and any suggestion that he was acquitted or "cleared" of the escape charge lacks factual support.

Additionally, he does not identify the source of law underlying this claim, but to the extent he is relying on state law, the claim is not cognizable in this proceeding. *Estelle*, 502 U.S. at 67-68. To the extent this is a recasting of his federal Double Jeopardy claim, the claim lacks merits for the reasons outlined above. Regardless of what happened with the escape charge, it was permissible for the court to modify his sentence for the robbery conviction based on his admitted probation violation. *See Witte*,

515 U.S. at 401-02; *Wyatt*, 102 F.3d at 245. Thus, even if this claim were not defaulted, he has not established a constitutional error warranting federal habeas relief.

      D.    Certificate of Appealability

Pursuant to Rule 11 of the Rules Governing Section 2254 Cases, the court must either issue or deny a certificate of appealability in all cases where it enters a final order adverse to the petitioner. To obtain a certificate of appealability, the petitioner must make a substantial showing of the denial of a constitutional right by establishing "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotation marks and citation omitted).

For the reasons fully explained above, Mr. Hampton's claims are procedurally defaulted and without merit under AEDPA standards. The court finds no basis to conclude that reasonable jurists would debate the outcome of the petition or find a reason to encourage Mr. Hampton to proceed further. Accordingly, the court declines to issue him a certificate of appealability.

## III.    CONCLUSION

For the reasons set forth above, the petition (ECF 7) is DENIED, and the petitioner is DENIED a certificate of appealability. The clerk is DIRECTED to close this case.

SO ORDERED on June 12, 2023

s/ Michael G. Gotsch, Sr.
Michael G.  Gotsch, Sr.
United States Magistrate Judge